


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KIM KWANG JIN (김관진)<br>  a/k/a "P.S.,"<br>KANG TAE BOK (강태복)<br>  a/k/a "WONG SHAO ONN,"<br>JONG PONG JU (정봉주)<br>  a/k/a "BRYAN CHO," AND<br>CHANG NAM IL (창남일)<br>  a/k/a "BONG CHEE SHEN,"<br>  a/k/a "PETER XIAO" | **Under Seal**<br><br>Criminal Indictment<br><br>No. 1:25-CR-291 |

THE GRAND JURY CHARGES THAT:

**General Allegations**

1. To fraudulently obtain funds, citizens of the Democratic People's Republic of Korea ("North Korea") have sought remote information technology ("IT") work with U.S. and foreign companies. These IT workers posed as non-North Koreans to obtain remote employment and used access gained through such employment to fraudulently obtain virtual currency assets of victim companies.

2. The defendants,

KIM KWANG JIN a/k/a "P.S.,"
KANG TAE BOK a/k/a "Wong Shao Onn,"
JONG PONG JU a/k/a "Bryan Cho," and
CHANG NAM IL a/k/a "Bong Chee Shen," a/k/a "Peter Xiao,"

were citizens of North Korea who used stolen and false personally identifiable information to pose as non-North Koreans and thereby obtain employment with technology companies, gain victim companies' trust, obtain access to virtual currency assets controlled by victim companies, steal those virtual currency assets, and launder the proceeds of that activity.

3. As part of the schemes to defraud and launder the proceeds, the defendants, KIM KWANG JIN, KANG TAE BOK, JONG PONG JU, and CHANG NAM IL, and others unknown to the Grand Jury, worked as a co-located team. During the schemes, the defendants worked on victim companies' virtual currency smart contracts and collectively stole and laundered virtual currency from victim companies valued at more than $900,000 at the time of the thefts. The defendants then sought to conceal the origin of these funds by laundering them.

4. "Virtual currency" is a term used to describe a digital representation of value, other than a representation of the U.S. dollar or a foreign currency, that functions as a unit of account, a store of value, and a medium of exchange. Virtual currency includes "cryptocurrency," which is a type of virtual currency that uses cryptography to secure transactions that are digitally recorded on a distributed ledger, such as a blockchain.

5. A "blockchain" is a term used to describe a distributed ledger that consists of a growing list of records, called blocks, that are securely linked together using cryptography. Blockchains are typically managed by a peer-to-peer computer network for use as a public distributed ledger, where nodes collectively adhere to a consensus algorithm protocol to add and validate new transaction blocks.

6. A "smart contract" is a term used to describe computer code that automatically executes all or parts of an agreement and is stored on a blockchain platform.

7. A "funding pool" is a collection of virtual currency from individuals who make funds available for the operation of a smart contract, usually as part of an investment.

8. "Telegram" is an encrypted messaging application that allows users to send messages, photos, videos, and files.

9. "Discord" is an instant messaging and Voice-over-Internet-Protocol social platform that allows users to communicate through voice calls, video calls, and text messaging.

10. "Ether" is a virtual currency that operates on the decentralized blockchain Ethereum.

11. "Bitcoin" is a virtual currency that operates on the decentralized blockchain of the same name.

12. "MATIC" is a token that operates on the decentralized blockchain Polygon.

13. "ELIXIR" is a token that operates on the decentralized blockchain Ethereum.

14. "BNB" or "Binance Coin" is a virtual currency.

15. "START" or "StartCoin" is a virtual currency.

16. A "virtual currency mixer" is a service that allows users to, for a fee, send virtual currency to designated recipients in a manner designed to conceal and obfuscate the source of the virtual currency.

17. Company-1 was a blockchain research and development company headquartered in Atlanta, Georgia.

18. Company-2 was a virtual token development company located in Serbia.

19. Virtual Currency Exchange-1 was a cryptocurrency exchange.

### Count One
### Wire Fraud Conspiracy
### (18 U.S.C. § 1349)

20. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 19 of this Indictment as if fully set forth herein.

21. Beginning no later than in or about December 2020, and continuing until in or about April 2022, in the Northern District of Georgia and elsewhere, the defendants,

KIM KWANG JIN a/k/a "P.S.,"
KANG TAE BOK a/k/a "Wong Shao Onn,"
JONG PONG JU a/k/a "Bryan Cho," and
CHANG NAM IL a/k/a "Bong Chee Shen," a/k/a "Peter Xiao,"

did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and others unknown to the Grand Jury to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses,

4

representations, and promises, and by the omission of material facts, well knowing and having reason to know that said pretenses were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, and, in so doing, to cause interstate and foreign wire communications to be made in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

*Manner and Means*

22. The objects of the conspiracy were to be accomplished, in substance, as follows:

- (a) The defendants, KIM KWANG JIN, KANG TAE BOK, JONG PONG JU, and CHANG NAM IL, and others unknown to the Grand Jury, traveled to locations outside of North Korea, including the United Arab Emirates, using North Korean travel documents, and lived and worked as a co-located team.

- (b) Defendants KIM KWANG JIN, JONG PONG JU, and CHANG NAM IL, and others unknown to the Grand Jury, sought and obtained employment as remote IT workers for companies based in the United States and elsewhere, including Company-1 and Company-2, using aliases and hiding their true nationalities and intentions to defraud their would-be employers.

- (c) After being hired, defendants KIM KWANG JIN, JONG PONG JU, and CHANG NAM IL, and others unknown to the Grand Jury, earned the trust

      of their employers through completing projects, with the goal of gaining access to employers' virtual currency assets.

(d) Defendants KIM KWANG JIN and JONG PONG JU, and others unknown to the Grand Jury, convinced the companies to assign them and others work related to the companies' virtual currency assets. This work would necessarily require that defendants KIM KWANG JIN and JONG PONG JU, and others unknown to the Grand Jury, be provided information about how and where the companies' virtual currency assets were stored and how they could be transferred.

(e) The defendants, KIM KWANG JIN, KANG TAE BOK, JONG PONG JU, and CHANG NAM IL, and others unknown to the Grand Jury, used this information to fraudulently obtain and transfer the companies' virtual currency assets without the companies' knowledge or consent.

(f) To delay discovery of the fraudulent scheme, defendants KIM KWANG JIN and JONG PONG JU, and others unknown to the Grand Jury, denied to their employers being involved in the virtual currency asset thefts.

23. Since at least in or about December 2020 until in or about April 2022, defendant KIM KWANG JIN, using the name of victim P.S. as an alias, was employed by the founder of Company-1 to develop source code. During his employment, defendant KIM KWANG JIN provided Company-1 with a false Portuguese identification card for victim P.S. that included a photo of defendant KIM KWANG JIN's face next to victim P.S.'s actual date of birth and government identification number. Company-1 never would have hired defendant KIM

KWANG JIN had Company-1 known that defendant KIM KWANG JIN was a North Korean citizen.

24. When communicating with employees of Company-1, defendant KIM KWANG JIN hid his true identity by pretending to be victim P.S. After being hired by Company-1, defendant KIM KWANG JIN eventually gained access to Company-1's source code for its smart contracts.

25. Since at least in or about May 2021 and continuing until in or about February 2022, defendant JONG PONG JU, using the alias "Bryan Cho," was employed by Company-2 to provide IT services. During his employment, defendant JONG PONG JU provided Company-2 with a Malaysian identification card that included a photo of defendant JONG PONG JU's face next to identifying information associated with the alias Bryan Cho. Company-2 never would have hired defendant JONG PONG JU had Company-2 known that defendant JONG PONG JU was a North Korean citizen.

26. When communicating with employees of Company-2, defendant JONG PONG JU hid his true identity by pretending to be "Bryan Cho." After being hired by Company-2, defendant JONG PONG JU eventually gained access to Company-2's virtual currency assets.

27. In or about October 2021, via Telegram, defendant JONG PONG JU, using the Telegram account for the "Bryan Cho" alias, recommended that the founder of Company-2 hire "Peter Xiao" as a developer. In truth, "Peter Xiao" was actually defendant CHANG NAM IL, which defendant JONG PONG JU knew at the time he recommended "Peter Xiao" to Company-2. The founder of Company-

7

2, relying on defendant JONG PONG JU's recommendation, hired defendant CHANG NAM IL, believing that defendant CHANG NAM IL was "Peter Xiao," to work on front-end development. Defendant CHANG NAM IL, using the alias "Peter Xiao," worked for Company-2 from in or about October 2021 until in or about January 2022.

28. On or about January 25, 2022, defendant JONG PONG JU sent a video via Telegram to the owner of Company-2. In the video, defendant JONG PONG JU is holding a fraudulent Malaysian driver's license listing the name "Bryan Cho," and he states the name "Bryan Cho" and the date "January 25, 2022." The owner of Company-2 had requested a video to verify the "Bryan Cho" identity before providing defendant JONG PONG JU with additional access to the company's virtual currency assets.

29. On or about February 11, 2022, defendant JONG PONG JU, using access granted to him by Company-2, fraudulently obtained virtual currency tokens valued at approximately 60 Ether (worth approximately $175,680 at the time of the theft) from Company-2 by transferring the virtual currency to a virtual currency address controlled by defendant JONG PONG JU.

30. On or about February 11, 2022, via Telegram, defendant JONG PONG JU, using the Telegram account for the "Bryan Cho" alias, offered a false explanation for the transfer of stolen funds, stating: "I think I accidently (sic) dropped the private key into the .env .sample file." When asked by the founder of Company-2 where the ".env file" was uploaded, defendant JONG PONG JU, using the Telegram account for the "Bryan Cho" alias, stated: "Github[.]"

31. On or about March 29, 2022, defendant KIM KWANG JIN, without Company-1's knowledge or consent, modified the source code for two smart contracts owned and controlled by Company-1 that resided on the Ethereum and Polygon blockchains. Defendant KIM KWANG JIN's modifications to these smart contracts changed the rules governing the withdrawal of virtual currency from two funding pools controlled by Company-1.

32. From on or about March 29 until on or about March 30, 2022, defendant KIM KWANG JIN, without Company-1's knowledge or consent, fraudulently obtained approximately 4,074,960 ELIXIR tokens, 229,051 MATIC tokens, and 110,846 START (worth approximately $740,000 at the time of the theft) from the two Company-1 funding pools by transferring the virtual currency to a virtual currency address controlled by defendant KIM KWANG JIN.

33. On or about March 30, 2022, via Telegram, defendant KIM KWANG JIN, using the Telegram account for the victim P.S. alias, offered a false explanation for the transfer of stolen funds, stating: "hi bro, really sorry – these weird txs started happening after I refactored my github."

34. On or about March 30, 2022, via Telegram, the founder of Company-1 sent a message to defendant KIM KWANG JIN's Telegram account for the victim P.S. alias, accusing him of stealing virtual currency from Company-1's funding pools. Defendant KIM KWANG JIN, using the Telegram account for the victim P.S. alias, denied responsibility, stating: "How many times do I need to tell you???? I didn't do it!!! It's not me!!!"

All in violation of Title 18, United States Code, Section 1349.

## Counts Two through Four
## Wire Fraud
## (18 U.S.C. § 1343)

35. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 19 and 22 through 34 of this Indictment as if fully set forth herein.

36. On or about the dates set forth in the following table, in the Northern District of Georgia and elsewhere, defendant KIM KWANG JIN a/k/a "P.S.," aided and abetted by others known and unknown to the Grand Jury, for the purpose of executing the aforementioned scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions, with intent to defraud, caused to be transmitted by means of a wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, namely, the wires identified in the following table:

| Count | Date | Wire |
|---|---|---|
| 2 | 1/21/2021 | Discord message sent by defendant KIM KWANG JIN to the founder of Company-1 documenting work performed, stating, in part, that 90 hours were worked. |
| 3 | 3/30/2022 | Telegram message sent by defendant KIM KWANG JIN to the founder of Company-1 falsely denying theft of funds, stating, in part: "How many times do I need to tell you???? I didn't do it!!! It's not me!!!" |

| Count | Date | Wire |
|---|---|---|
| 4 | 3/30/2022 | Telegram message sent by defendant KIM KWANG JIN to the founder of Company-1 offering a false explanation for the transfer of stolen funds, stating: "hi bro, really sorry – these weird txs started happening after I refactored my github." |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

### Count Five
### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

37. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 19 and 22 through 34 of this Indictment as if fully set forth herein.

38. Beginning on or about January 26, 2021, and continuing until on or about October 1, 2022, in the Northern District of Georgia and elsewhere, the defendants,

KIM KWANG JIN a/k/a "P.S.,"
KANG TAE BOK a/k/a "Wong Shao Onn,"
JONG PONG JU a/k/a "Bryan Cho," and
CHANG NAM IL a/k/a "Bong Chee Shen," a/k/a "Peter Xiao,"

did knowingly combine, conspire, confederate, agree, and have a tacit understanding with each other and others unknown to the Grand Jury to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, that is: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the

11

transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### *Manner and Means*

39. In furtherance of the conspiracy and to accomplish its objects, the defendants, KIM KWANG JIN, KANG TAE BOK, JONG PONG JU, and CHANG NAM IL, and others unknown to the Grand Jury, opened and used virtual currency trading accounts to conceal and disguise the nature, location, source, ownership, and control of proceeds fraudulently obtained through the remote IT worker wire fraud scheme. In doing so, the defendants, KIM KWANG JIN, KANG TAE BOK, JONG PONG JU, and CHANG NAM IL, used aliases and a virtual currency mixer known as Tornado Cash.

40. On or about January 26, 2021, defendant KANG TAE BOK, using the alias "Wong Shao Onn," opened an account at Virtual Currency Exchange-1. In doing so, defendant KANG TAE BOK provided Virtual Currency Exchange-1 with a fraudulent Malaysian identity card listing the name "Wong Shao Onn," a Malaysian identification number, and an address. The Malaysian identity card had a picture of defendant KANG TAE BOK.

41. On or about August 5, 2021, defendant CHANG NAM IL, using the alias "Bong Chee Shen," opened an account at Virtual Currency Exchange-1. In doing

so, defendant CHANG NAM IL provided a fraudulent Malaysian identity card listing the name "Bong Chee Shen," a Malaysian Identification number, and an address. The Malaysian identity card had a picture of defendant CHANG NAM IL.

42. On or about February 13, 2022, defendant JONG PONG JU sent virtual currency totaling approximately 60 Ether that was fraudulently obtained from Company-2 to Tornado Cash for mixing.

43. From on or about February 25 through on or about February 27, 2022, approximately 19.8 Ether was transferred from Tornado Cash to defendant CHANG NAM IL's account at Virtual Currency Exchange-1, held in the name of "Bong Chee Shen."

44. From on or about March 29 through on or about March 30, 2022, defendant KIM KWANG JIN sent virtual currency of approximately 31,000 MATIC tokens, 165 BNB, and 96 Ether to Tornado Cash for mixing. These proceeds were originally fraudulently obtained from Company-1's smart contracts and converted into these virtual currencies during subsequent transfers of the proceeds.

45. From on or about March 30 through on or about March 31, 2022, at least approximately 0.99 Bitcoin was transferred from Tornado Cash to defendant KANG TAE BOK's account at Virtual Currency Exchange-1, held in the name of "Wong Shao Onn."

All in violation of Title 18, United States Code, Section 1956(h).

## Forfeiture

46. Upon conviction of one or more of the offenses alleged in Counts One through Four of this Indictment, the defendants,

> KIM KWANG JIN a/k/a "P.S.,"
> KANG TAE BOK a/k/a "Wong Shao Onn,"
> JONG PONG JU a/k/a "Bryan Cho," and
> CHANG NAM IL a/k/a "Bong Chee Shen," a/k/a "Peter Xiao,"

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes, or is derived from, proceeds traceable to the offenses, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of each offense alleged in Counts One through Four of this Indictment.

47. Upon conviction of the offense alleged in Count Five of this Indictment, the defendants,

> KIM KWANG JIN a/k/a "P.S.,"
> KANG TAE BOK a/k/a "Wong Shao Onn,"
> JONG PONG JU a/k/a "Bryan Cho," and
> CHANG NAM IL a/k/a "Bong Chee Shen," a/k/a "Peter Xiao,"

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count Five of this Indictment.

48. If, as a result of any act or omission of the defendants,

>KIM KWANG JIN a/k/a "P.S.,"
>KANG TAE BOK a/k/a "Wong Shao Onn,"
>JONG PONG JU a/k/a "Bryan Cho," and
>CHANG NAM IL a/k/a "Bong Chee Shen," a/k/a "Peter Xiao,"

any property subject to forfeiture:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to

seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A _____True_____ BILL

_____
FOREPERSON

THEODORE S. HERTZBERG
 *United States Attorney*

SAMIR KAUSHAL
 *Assistant United States Attorney*
Georgia Bar No. 935285

JACQUES SINGER-EMERY
 *Trial Attorney*
 *National Security Division*
New York Bar No. 5828975

ALEX R. SISTLA
 *Assistant United States Attorney*
Georgia Bar No. 845602

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

16